· FRANCIS C. ADAMS *vs.* KERVIN R. DUNTON.

Suffolk.     January 10, 1933. — September 12, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Negligence*, Of hunter, In use of firearms, Proximate cause, Joint enterprise, Contributory. *Proximate Cause. Evidence*, Presumptions and burden of proof.

At the hearing in a municipal court of an action of tort by one who was shot when, with the defendant and a guide, he was in a flat bottomed boat tied in a duck blind, the guide testified that the plaintiff's gun jammed so that it could not be fired and that thereafter the defendant "stood his gun up in the blind and I heard a report. I did not see the gun fall down and go off or anything of that sort, but I heard a report. . . . I did not see the gun discharged. I saw after the gun discharged that it had hit" the plaintiff. It did not appear that there were any guns other than the plaintiff's and the defendant's in the boat or any other gunners in the vicinity. There was other evidence that the defendant's gun when it was stood up in the blind had the safety button off instead of on; that, had it been on, the trigger would have been prevented from going back; that the discharge came coincidently with movements of both the plaintiff and the defendant; that the shot entered the plaintiff's thigh from behind at a time when he was practically in a sitting position facing forward; and that the shot went downward and parallel with the leg bone. *Held*, that

(1) An inference was warranted that the shot which hit the plaintiff came from the defendant's gun;

(2) An inference was warranted that the defendant's act in leaving his loaded gun with the safety device off as above described was the cause of the plaintiff's injury;

(3) The plaintiff, in order to establish a causal relation between the defendant's act and his own injury, was not obliged to produce evidence as to the exact manner of the happening of the accident, nor required to exclude all other possible causes;

(4) The evidence warranted the judge in finding that the injury of the plaintiff was caused by negligence of the defendant and that negligence of the plaintiff did not contribute to his injury.

It not appearing that the plaintiff at the time of the accident above described had the right or the power to control the use or the disposition which the defendant should make of his own gun, a finding of such a joint enterprise, then existing, as would require the plaintiff, in order to recover, to show gross negligence on the defendant's part, could not properly have been made; and it was proper for the judge to refuse to rule that "Where plaintiff and defendant are gunning together, negligence of defendant must be gross to cause liability."

A joint enterprise of two persons which affects legal liability for negligence does not exist unless each has an equal right to direct and control the conduct of the other concerning acts or omissions which cause, or contribute to the causation of, injury.

TORT. Writ in the Municipal Court of the City of Boston dated December 18, 1931.

In the Municipal Court, the action was heard by *Dowd,* J. Material evidence and rulings by the judge are stated in the opinion. There was a finding for the plaintiff in the sum of $3,000, and a report to the Appellate Division was ordered dismissed. The defendant appealed.

· *S. R. Jones,* (*V. B. Kneeland* with him,) for the defendant.

*C. A. Barnes,* for the plaintiff.

DONAHUE, J. The plaintiff's declaration alleges that while on a duck hunting trip in Maine he was shot and injured by "the negligence and wilful, wanton, or reckless act" of the defendant. A judge of the Municipal Court of the City of Boston found for the plaintiff on the ground that negligence of the defendant caused, and that negligence of the plaintiff did not contribute to, the plaintiff's injury. From an order of the Appellate Division dismissing a report the defendant has appealed.

At the time of the plaintiff's injury the plaintiff and the defendant were in a flat bottomed boat in a duck blind on a lake. The blind consisted of stakes loosely driven into the bottom of the lake, and a covering of boughs and brush by which the occupants were concealed from view. The boat, which was about sixteen feet long, was not anchored. It was tied to the blind in some way at the bow and stern but obviously not so securely fastened that movements of the occupants might not cause some movement of the boat. Just before the plaintiff's injury he had been seated in the bow of the boat and the defendant on a thwart about three or four feet behind the plaintiff; both were facing forward. Their guide sat in the stern.

The testimony taken in the aspect most favorable to the plaintiff does not support the defendant's contention that the evidence did not warrant the finding that the shot

which injured the plaintiff came from the defendant's gun.
Shortly after the boat entered the blind, ducks were flying
in the vicinity and the guide told the plaintiff and the de-
fendant that they could load their guns and they did. The
plaintiff by mistake loaded his twelve gauge gun with a
sixteen gauge shell with the result that it jammed in the
breech and prevented the gun being fired. The plaintiff
told his companions of his difficulty and told the defendant
to go ahead and get ready to shoot. The defendant had
started to rise from his seat and the plaintiff had arisen
from his seat about three quarters of an inch and was prac-
tically in a sitting position trying to push the shell out of
the breech of his gun, when he was shot. The defendant
was not called as a witness but the guide testified in a
deposition that after the plaintiff's gun was jammed the
defendant "stood his gun up in the blind and I heard a
report. I did not see the gun fall down and go off or any-
thing of that sort, but I heard a report. . . . I did not see
the gun discharged. I saw after the gun discharged that
it had hit" the plaintiff. He also testified that a loaded
shotgun if it receives a jar is likely to explode whether the
safety is on or off. His testimony with the fact that it did
not appear that the guide had a gun or that there were
any other guns but the plaintiff's and the defendant's in
the boat or any other gunners in the vicinity, and with the
evidence that the plaintiff's gun had jammed so that it
could not be fired, that the defendant's gun when it was
stood up in the blind had the safety button off instead of
on, which according to other testimony would have pre-
vented the trigger from going back, that the discharge came
coincidently with movements of both plaintiff and de-
fendant, that the shot entered the plaintiff's thigh from
behind at a time when he was practically in a sitting po-
sition facing forward, and that the shot went downward
and parallel with the leg bone, warranted the finding by
inference that the shot came from the defendant's gun.

The precise manner in which the defendant stood up his
gun or the exact way in which it came to be pointed, as it
indubitably was pointed, at the plaintiff at the instant of

its discharge, did not appear. The failure of the plaintiff to produce evidence either that the gun was left by the defendant so that it was aimed at the plaintiff or that it came to be so aimed in falling from its original position, does not leave the plaintiff without evidence that the conduct of the defendant was the cause of the plaintiff's injury. The defendant did not keep his gun in his actual manual possession but having it within his control he saw fit to leave it with the safety off, standing in the shaky blind at a time when he and the plaintiff were moving in the boat which was moored to that blind. In the absence of any evidence to the contrary (*Washburn* v. *R. F. Owens Co.* 258 Mass. 446, 450) the circumstances here appearing reasonably warrant the inference that his act in so leaving his loaded gun with the safety device off was the cause of the plaintiff's injury. The plaintiff in order to establish a causal relation between the defendant's act and his own injury was not obliged to produce evidence as to the exact manner of the happening of the accident or required to exclude all other possible causes. *McNicholas* v. *New England Telephone & Telegraph Co.* 196 Mass. 138, 141. *Washburn* v. *R. F. Owens Co.* 252 Mass. 47, 55. *Navien* v. *Cohen,* 268 Mass. 427, 431. *Hendler* v. *Coffey,* 278 Mass. 339, 341.

There was evidence therefore which required the trial judge to measure the conduct of the defendant by the standard of the conduct of a man of reasonable prudence in the same situation. The quantity of care required of a person increases with any increase in the likelihood of harmful consequences to others if adequate care is not used. It is manifestly more dangerous to stand up in a boat in a precarious position a loaded gun than to do the same thing with a boat hook. Care commensurate with the extent of danger likely to come from the circumstance that the gun was loaded and the safety off was required of the defendant. But the liability of one handling or controlling a loaded gun does not, as the defendant contends, depend upon gross negligence; it exists if there is a failure to use the care which would have been used by a person of reasonable prudence in all the attendant circumstances. *Whitten* v.

*Hartin,* 163 Mass. 39, 41. *Moebus* v. *Becker,* 17 *Vroom,* 41. *Manning* v. *Jones,* 95 Ark. 359. *Harper* v. *Holcomb,* 146 Wis. 183. *Webster* v. *Seavey,* 83 N. H. 60. The evidence warranted the judge in finding that the injury of the plaintiff was caused by negligence of the defendant and that negligence of the plaintiff did not contribute to his injury.

The defendant requested the ruling that "Where plaintiff and defendant are gunning together, negligence of defendant must be gross to cause liability." He bases his argument in support of his exception to the denial of this request upon the assumption that at the time the plaintiff was injured the parties were engaged in a joint enterprise. Whether or not the parties had been so engaged while reaching the spot where they were and intended again to resume that relationship while returning does not determine the pertinent question whether at the time of the accident a joint enterprise was in force. (See *Beaucage* v. *Mercer,* 206 Mass. 492, 498.) There is nothing in the record which affords the basis for the finding that the plaintiff at the time of the accident had the right or the power to control the use or the disposition that the defendant should make of his own gun. It follows that a finding of a joint enterprise then existing could not have been made. A joint enterprise of two persons which affects legal liability for negligence does not exist unless each has an equal right to direct and control the conduct of the other concerning acts or omissions which cause, or contribute to the causation of, injury. *Barry* v. *Harding,* 244 Mass. 588. *Caron* v. *Lynn Sand & Stone Co.* 270 Mass. 340, 346. *Thompson* v. *Sides,* 275 Mass. 568, 570. It is not necessary to consider the rights of the parties if they had been engaged in a joint enterprise. (See *Loftus* v. *Pelletier,* 223 Mass. 63, 65.) The defendant's request for a ruling was properly denied.

*Order dismissing report affirmed.*